## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROSEMARY MCVICKER, | |
| Plaintiff, | |
| v. | Case No. 22-cv-108-JFH |
| MUSKOGEE HOUSING AUTHORITY, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment.  Dkt. No. 43.  Defendant's Motion has been fully briefed and is ripe for consideration.  For the reasons set forth below, the Court grants Defendant's Motion with respect to Plaintiff's claims that are federal in nature.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

### I.       FACTUAL AND PROCEDURAL BACKGROUND

The following material facts are either uncontroverted or construed in the light most favorable to Plaintiff.  The Court notes that Plaintiff's Response in Opposition to the Defendant's Motion for Summary Judgment [Dkt. No. 74] frequently purports to dispute portions of Defendant's statement of undisputed material facts without citing to any evidence in the record contradicting those facts; in such instances, Plaintiff has failed to properly dispute the asserted fact. *See* Fed. R. Civ. P. 56(c)(1); LCvR 56.1; *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1246 n.13 (10th Cir. 2003) (explaining that the district court need not comb through the summary judgment record for evidence supporting a party's arguments).

Defendant Muskogee Housing Authority ("Defendant" or "MHA"), is a federally funded public housing agency and an Oklahoma public trust, created in accordance with the Oklahoma Housing Authority Act, 63 O.S. § 1051.  Dkt. No. 43 at 3.  MHA manages Heritage Park

1

Apartments, an apartment complex in Muskogee, Oklahoma; residency at Heritage Park is limited to persons with disabilities as defined in Section 811 of the National Affordable Housing Act, 42 U.S.C. § 8013(k)(2).  *Id*.  Plaintiff has resided at Heritage Park Apartments since 2015.  *Id*.

### A.   Facts relating to 2021 Forcible Entry and Detainer Action.

Plaintiff and MHA executed a lease addendum on November 6, 2019 to incorporate the Violence Against Women and Justice Department Reauthorization Act of 2005 (VAWA); VAWA makes it unlawful for a federally funded housing authority to evict a tenant due to his or her status as a victim of domestic violence.  *Id*.; see 34 U.S.C. 12491(b).  VAWA also permits housing providers to require individuals invoking VAWA protections to complete documentation certifying their eligibility for VAWA protections.  34 U.S.C. §12491(c). The parties' lease addendum provides in relevant part:

> The Landlord may request in writing that the victim, or a family member on the victim's behalf, certify that the individual is a victim of abuse and that the Certification of Domestic Violence, Dating Violence or Stalking, Form HUD-91066, or other documentation as noted on the certification form, be completed and submitted within 14 business days, or an agreed upon extension date, to receive protection under the VAWA.  Failure to provide the certification or other supporting documentation within the specified timeframe may result in eviction.

*Id*.  MHA's VAWA policy states that:  "Subject only to waiver as provided in paragraph VII.C., MHA shall require verification in all cases where an individual claims protection against an action involving such individual proposed to be taken by MHA."  *Id*.; Dkt. No. 43-1, Ex. K.  The policy further provides that any waiver of this verification requirement is at the sole discretion of the Executive Director of MHA, that such waiver must be in writing, and that waiver in any particular case will not create any right to waiver in any other case.  Dkt. No. 43-1, Ex. K.

MHA has also adopted a policy according to which it may ban from its premises persons who engage in criminal conduct or other harmful or improper behavior.  Dkt. No. 43 at 6.  On or

2

about June 23, 2020, MHA learned that a domestic violence charge had been filed against a man named Logan Smith ("Smith") arising from an incident that took place at Plaintiff's address within Heritage Park.  Dkt. No. 43 at 6.  MHA banned Smith from its property; the ban notice was served on Smith and Plaintiff.  *Id*. at 6-7.

MHA sent a letter to Plaintiff on February 24, 2021, warning Plaintiff that her lease would be terminated if she continued to allow Smith on her property; the letter represented that MHA had received multiple complaints that Smith had been staying at Plaintiff's apartment.[1]  Dkt. No. 43-6.  MHA employee Chistopher Logan ("Logan") states that, on March 2, 2021, he observed Plaintiff allow Smith into her apartment unit; Smith had been dropped off at Heritage Park by Joseph Neighbors ("Neighbors"), who was known to Logan because Neighbors used to be employed with MHA.  Dkt. No. 43-4.  Logan alerted MHA to Smith's presence, and the police were called; soon after, police arrived and escorted Smith from the premises and cited Smith for trespassing on MHA grounds.  Dkt. No. 43 at 7.

On March 3, 2021, MHA issued notice to Plaintiff that it was terminating her lease due to her permitting Smith in her apartment.  *Id*.  On March 5, 2021, MHA received correspondence from Plaintiff asserting protections under VAWA regarding the March 2, 2021 incident in which Smith was observed at her apartment.  *Id*.  MHA sent notice to Plaintiff in response that it would not terminate her tenancy, but also provided Plaintiff with a VAWA certification form and informed Plaintiff that the form must be returned within 14 days.  Dkt. No. 43 at 7-8; Dkt. No. 43-1, Ex. O.  The parties dispute whether Plaintiff returned the certification form.  *See* Dkt. No. 43-1, *but see* Dkt. No. 74-8.

---

[1] The Court does not take as undisputed the truth of the representations in the letter, but it is undisputed that this letter was sent to Plaintiff.

MHA issued Plaintiff a 30-day notice of lease termination on March 26, 2021 after, according to MHA, it did not receive Plaintiff's VAWA certification form.  Dkt. No. 43 at 8-9. MHA instituted a forcible entry and detainer action against Plaintiff in Muskogee County District Court on April 27, 2021.  Dkt. No. 43 at 9.  Judgment was entered in favor of MHA on August 31, 2021; this judgment was set aside on September 29, 2021, and MHA's forcible entry and detainer action was dismissed.  Plaintiff was never removed from her residence as a result of this FED action.  Dkt. No. 43 at 10.

### B.    Facts relating to 2022 Forcible Entry and Detainer Action.

Plaintiff's lease with MHA provides that MHA may terminate the lease on account of "drug related criminal activity engaged in, on, or near the premises" or upon MHA's determination that a "household member is illegally using a drug."  Dkt. No. 43 at 10.

In January 2019, Plaintiff obtained an Oklahoma medical marijuana card; Plaintiff did not inform MHA of this.  Dkt. No. 43 at 11.  MHA regularly informed tenants through monthly newsletters that use of medical marijuana was prohibited on MHA property.  *Id.*; Dkt. No. 43-1, Ex. H.[2]  Plaintiff acknowledged understanding that MHA had prohibited the use of medical marijuana and that its use on premises could result in lease termination.  Dkt. No. 43 at 11.

On May 19, 2019, Defendant sent Plaintiff a letter stating that there have been "numerous complaints" of marijuana smell coming from Plaintiff's apartment; the letter informed Plaintiff that use of marijuana was a violation of her lease and could result in her eviction.  Dkt. No. 43 at 11; Dkt. No. 43-1, Ex. S.  In November 2021 and on February 9, 2022, MHA received complaints from other tenants that Plaintiff was smoking marijuana in her unit.  Dkt. No. 43-1, Ex. T; Dkt.

---

[2]  Marijuana is a schedule I federal controlled substance and possession and use is illegal under federal law.  21 U.S.C. §812.

No. 43-1, Ex. U.  Multiple MHA employees reported observing drug paraphernalia and smelling marijuana in Plaintiff's apartment.  Dkt. No. 43 at 13; Dkt. No. 43-1; 43-13; 43-5.  Plaintiff admits to using marijuana in her unit, but when this occurred remains unclear.  Dkt. No. 43-2 at 270:19-271:10.

On February 10, 2022, MHA performed pest control treatment in Plaintiff's unit; advanced notice was provided to Plaintiff of the treatment, and notice was given that management may accompany pest control into the unit.  Dkt. No. 43-5; Dkt. No. 43-14; Dkt. No. 43-1, Ex. F.  During the pest control visit, an MHA employee saw and photographed what he believed to be marijuana paraphernalia.  Dkt. No. 43-5.  The employee informed his superiors at MHA about the suspected marijuana paraphernalia.  Dkt. No. 43-5.

Based upon its determination that Plaintiff had possessed and used illegal drugs in her unit, MHA issued a 30-day notice to vacate on February 14, 2022.  Dkt. No. 43-1, Ex. V.  MHA filed a forcible entry and detainer action in Muskogee County District Court on March 15, 2022.  Following a hearing, judgment was entered in favor of MHA on July 6, 2022.  The Journal Entry of Judgment found that Plaintiff had violated the terms of her lease by possessing marijuana and marijuana related drug paraphernalia.  Dkt. No. 43-18.  Based on this judgment, MHA obtained a writ of execution on July 6, 2022.  Dkt. No. 43-19.  Plaintiff was removed from her unit on July 6, 2022.  Dkt. No. 43-20.  However, the Court announced on July 7, 2022 that it intended to vacate its judgment of July 6, 2022, and Plaintiff was permitted to return to her unit.  Dkt. No. 43-1 at 7.[3] On December 6, 2023, another Order was entered in the Forcible Entry and Detainer matter; this subsequent Order held that Plaintiff was entitled to possession of her unit, but it did not overturn

---

[3] The Court held that, subsequent to the termination of the lease at issue, MHA and Plaintiff entered into a new tenancy by recertifying the lease.  Dkt. No. 43-22.

the Court's prior findings that "eviction was warranted due to [Plaintiff's] illegal drug activities on the property." Dkt. No. 43-22.

### C.    The Lawsuit.

Plaintiff filed the Complaint in this matter on April 7, 2022. Dkt. No. 2. Plaintiff has alleged eight causes of action against MHA. Dkt. No. 2. Several of Plaintiff's claims are federal in nature: Plaintiff alleges violation of the federal Fair Housing Act; violation of the Rehabilitation Act of 1973; violation of Plaintiff's Right to Due Process under the federal constitution; and violation of Plaintiff's federal constitutional right to be free from unreasonable searches. The remainder of Plaintiff's claims are state law claims: Plaintiff alleges violations of various rights secured by the Oklahoma constitution; violation of the Oklahoma Discrimination in Housing Act; Breach of Contract; violation of the Oklahoma Residential Landlord and Tenant Act; and Malicious Prosecution.

## II.   ANALYSIS

### A.    Applicable standard of review.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  If the movant carries this initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671.  If the nonmovant demonstrates a genuine dispute as to material facts, the Court views the facts in the light most favorable to him. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  However, a failure of proof "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

> **B.**   **MHA is entitled to summary judgment on Plaintiff's federal due process claim.**

Plaintiff brings a § 1983 claim against MHA, alleging that MHA deprived her of property without due process of law in violation of the United States Constitution.  Dkt. No. 2 at 21-22.  Specifically, Plaintiff alleges that MHA infringed her right to due process "because she had no actual notice that she would be deprived of her property interest in her subsidized housing unit for exercising her statutory right to legally use marijuana for medicinal purposes in the state of Oklahoma." *Id.* at 22.  MHA maintains that it is entitled to summary judgment on Plaintiff's claim because the record demonstrates that Plaintiff did, in fact, have notice that marijuana use was prohibited within her residence.  Assuming, without deciding, that due process requires actual notice to Plaintiff that use of medical marijuana in her unit could result in termination of her lease, MHA is entitled to summary judgment because the record demonstrates that Plaintiff did have such actual notice.

The record demonstrates that MHA sent numerous newsletters to tenants advising that marijuana use was prohibited at Heritage Park.  Dkt. No. 43 at 12; Dkt. No. 43-1, Ex. H.  In her deposition, Plaintiff admitted to receiving and reading these newsletters and admitted that she understood MHA's policy that medical marijuana was prohibited and use could result in lease termination.  Dkt. No. 43-2 at 20-21.

In response to MHA's Motion for Summary Judgment, Plaintiff simply asserts:  "Plaintiff disputes that the MHA regularly advised tenants that the possession of medical marijuana was prohibited on all MHA properties and could result in lease termination in its newsletters or otherwise."  Dkt. No. 74 at 3.  In an attempt to support this dispute, Plaintiff confusingly cites the numerous Heritage Park newsletters which state that use of marijuana is prohibited at Heritage Park.  Plaintiff does not address her deposition testimony, in which she admitted that she knew use of marijuana could result in termination of her lease.

Plaintiff's failure to legitimately dispute these facts is determinative of her due process claim.  The record establishes that Plaintiff did have actual notice that use of marijuana in her unit could result in lease termination, and, as such, MHA is entitled to summary judgment regarding Plaintiff's due process claim.

### C.    Plaintiff cannot recover under the Rehabilitation Act of 1973.

Plaintiff alleges that MHA violated the Rehabilitation Act of 1973, because MHA's "willful failure to adopt a written medical marijuana policy deprived the Plaintiff of an equal opportunity to participate in the Defendant's federally financially assisted housing program."  Dkt. No. 2 at 20. Plaintiff's theory of recovery here is not at all clear, but Plaintiff seems to allege that, because MHA did not adopt a written medical marijuana policy, Plaintiff did not have notice that her use

of medical marijuana could result in her lease termination.  Plaintiff thus casts her eviction for marijuana use as disability discrimination under the Rehabilitation Act.

Plaintiff seeks relief under Section 504 of the Rehabilitation Act, codified at 29 U.S.C. §794, which prohibits discrimination on the basis of disability in federal programs.  However, in defining "individual with a disability," the Rehabilitation Act specifically excludes individuals engaging in illegal drug use:  "For purposes of title V [29 USCS §§ 791 et seq.], the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use." 29 U.S.C § 705.  Marijuana is a schedule I federal controlled substance and possession and use is illegal under federal law.  21 U.S.C. §812.  The Rehabilitation Act does not permit recovery against MHA for actions it took against Plaintiff on account of her use of illegal drugs.  MHA is entitled to summary judgment.

Moreover, the record in this matter demonstrates that, even if MHA did not have a "written policy" prohibiting marijuana use, MHA had adopted a policy prohibiting marijuana use within Heritage Park Apartments, and Plaintiff was herself aware of this policy.  Dkt. No. 43-1, Ex. H; Dkt. No. 43-2 at 20-21.  Plaintiff admits she had notice that marijuana use was a basis for termination of her lease; MHA is entitled to summary judgment on this basis as well.  *See* § B, *supra*.

### D.   There has been no violation of Plaintiff's Fourth Amendment rights.

Plaintiff brings a claim for violation of her Fourth Amendment rights against MHA.[4] Plaintiff alleges that MHA's pest control inspection and treatment of Plaintiff's apartment unit,

---

[4] Such a claim must be brought pursuant to 42 U.S.C. § 1983, which Plaintiff has not cited in this portion of her Complaint.  MHA has not raised this issue in its Motion for Summary Judgment. As this Court finds that there has been no violation of Plaintiff's substantive Fourth Amendment rights, Plaintiff's errant pleading is inconsequential.  The Court will proceed to address the substantive claim at issue.

during which MHA photographed items in Plaintiff's unit that MHA believed demonstrated Plaintiff's illegal drug use, constituted an unreasonable search of Plaintiff's apartment in violation of Plaintiff's Fourth Amendment rights.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. Amend. IV.  "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Lowther v. Child. Youth & Fam. Dep't*, 101 F.4th 742, 760 (10th Cir. 2024) (citation omitted).  However, a warrantless search of a home is valid "if the officer has the voluntary consent of either the owner or a third party with actual or apparent authority." *United States v. Bass*, 661 F.3d 1299 (10th Cir. 2011).[5]  In accordance with this consent exception, numerous courts have held that inspections of rental units in conformance with the parties' lease do not constitute violations of the Fourth Amendment.   *Evans v. Lucas Metro. Hous. Auth.*, 2016 U.S. Dist. LEXIS 177354, *17-18, 2016 WL 7407539 (N.D. Ohio Dec. 22, 2016); *Echemendia v. Gene B. Glick Mgmt. Corp.*, 263 F. App'x 479, 482-83 (7th Cir. 2008); *Kendall v. Oxford Hous. Auth.*, 1994 U.S. Dist. LEXIS 21121, 1994 WL 1890896, at *2 (N.D. Miss Nov. 23, 1994); *Kiggins v. Haddon Twp.*, 2020 U.S. Dist. LEXIS 227879, *18-19, 2020 WL 7090748 (D.N.J. Dec. 4, 2020).

There has been no unreasonable search, as the undisputed facts demonstrate that MHA entered into Plaintiff's apartment pursuant to the lease agreement between the parties and, hence, with Plaintiff's consent.  In her lease with MHA, Plaintiff consented to MHA entering her unit "for

---

[5] The Fourth Amendment's protections apply only in the context of state action.  *See*, *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir. 1995).  MHA is an Oklahoma public trust created in accordance with the Oklahoma Housing Authority Act and, as such, is a state actor for Fourth Amendment purposes.

the purpose of making reasonable inspections and repairs and replacements." Dkt. No. 43-1, Ex. B at ¶13(e).  MHA's Resident Handbook informs Heritage Park residents that their units will be proactively sprayed for pests.  Dkt. No. 43-2, Ex. D.   MHA gave Plaintiff notice on February 7, 2022 that pest control spraying would be performed on February 10, 2022.  Dkt. No. 43; Dkt. No. 43-1, Ex. F.  When MHA's pest control agent entered Plaintiff's apartment, he observed what appeared to be marijuana paraphernalia in open view while he was conducting spraying activities; he took photos of the paraphernalia at the request of MHA management.  Dkt. No. 43-5.

Plaintiff argues that the "search" of her home exceeded the scope of the consent that was given because MHA took photos of drug paraphernalia in her apartment.  Plaintiff analogizes this case to *United States v. Benezario*, 339 F. Supp. 2d 361 (D.P.R. Oct. 8, 2004), but Plaintiff's analogy does not hold.  In *Benezario*, law enforcement officers admitted that, rather than obtaining a warrant to search defendant's home, they devised a ruse to trick defendant into consenting to a search of his home; the officers then pretended to be U.S. Marshals searching for a fugitive and thereby gained access to defendant's home.  *Benezario*, 339 F. Supp. 2d at 365.  The District Court held that the use of the "ruse" to gain defendant's consent, followed by officers' search that exceeded the defendant's fraudulently gained consent, violated defendants' Fourth Amendment rights.  *Id*. at 366-67.

The facts of this case are not similar to those in *Benezario*.  MHA did not misrepresent to Plaintiff who would be in Plaintiff's apartment; the notice to Plaintiff on February 7, 2022 (and every other one of the numerous notices that Plaintiff had received) stated that: "Any time that pest control is in your home, management may accompany them."  Dkt. No. 43; Dkt. No. 43-1, Ex. F. With such notice, and given Plaintiff's consent to inspections of her unit, it was reasonable to assume that open violations of Plaintiff's lease conditions may be observed by management or

reported to MHA during pest control efforts.  There is nothing unreasonable or deceptive about this.  MHA did not undertake an unanticipated, invasive search to discover the alleged drug paraphernalia; instead, the items were in open view within Plaintiff's apartment.  The fact that a photograph was taken of the paraphernalia is not significant to the Fourth Amendment analysis.  The pest control treatment and inspection of Plaintiff's apartment did not exceed the scope of her consent.

Lastly, Plaintiff asserts that because Plaintiff was required to permit MHA's entry into her apartment for pest control purposes, her consent was not voluntary.  In support of this argument, Plaintiff cites to *Benezario* again, which has no relevance to this issue so far as the Court can discern.  In her lease with MHA, Plaintiff consented to MHA entering her unit "for the purpose of making reasonable inspections and repairs and replacements."  Dkt. No. 43-1, Ex. B at ¶13(e).  The fact that Plaintiff consented to MHA's entry into her home as a condition of her lease does not render that consent invalid.  Plaintiff unsurprisingly cites to no authority that states otherwise.  MHA is entitled to summary judgment on Plaintiff's Fourth Amendment claim.

### E.    Federal Fair Housing Act claims.

Plaintiff contends that she is entitled to relief under the Fair Housing Act ("FHA") because MHA has discriminated against her based upon her sex and disability, and, further, has retaliated against Plaintiff in violation of the FHA.

The FHA makes it unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604.

A claim of discrimination may be premised upon either a disparate treatment or a disparate impact theory. *Rodriguez v. Brown*, 2022 U.S. App. LEXIS 23002, *12, 2022 WL 3453401 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). To prove a claim of disparate treatment under the FHA, a plaintiff may offer either direct evidence of the defendant's discriminatory intent, or a plaintiff may point to circumstantial evidence of discriminatory intent, thereby invoking the familiar *McDonnell Douglas* burden shifting scheme. *Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917, 919 (10th Cir. 2012). The Supreme Court has written that in disparate treatment cases, "the difference in treatment based on sex must be intentional." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 657-658 (2020).

A claim of disparate impact "doesn't require proof of intentional discrimination," but, instead, the plaintiff "must show that a specific policy caused a significant disparate effect on a protected group." *Id*. at 922. This is typically done through presentation of "statistical evidence involving the appropriate comparables necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors." *Id*. (internal citations omitted).

### i.       Sex Discrimination.

Plaintiff alleges that MHA discriminated against her based upon her status as a victim of domestic violence (and, thereby, her sex); specifically, Plaintiff alleges that MHA evicted her because she was being stalked by Smith. Dkt. No. 2 at 16-17. Defendant argues that domestic violence victims are not a protected class under the FHA and, even if they were, Plaintiff has not demonstrated a prima facie case that she may recover under the FHA. Factually, Defendant asserts

that Plaintiff was evicted because she persisted in allowing Smith into her unit, even though Smith had been banned from the Heritage Park.

The Court must first determine whether housing discrimination against a domestic violence victim is, in fact, a form of sex discrimination under the FHA. The Court's interpretation of the FHA "starts where all such inquiries must begin:  with the language of the statute itself."  *Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61, 69 (2011).  This Court must "presume that a legislature says in a statute what it means and means in a statute what it says there.  When words of a statute are unambiguous, then, this first canon is also the last:  judicial inquiry is complete."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Congress, in drafting the FHA, expressly denominated multiple protected classes – "race, color, religion, sex, familial status, and national origin" – status as a domestic violence victim is not one of these enumerated classes.  This unambiguous statutory text and its plain meaning control in the absence of compelling argument demonstrating that the text is ambiguous or otherwise in need of some further judicial gloss.

This Court has uncovered no decision from the Tenth Circuit Court of Appeals, or any other circuit court of appeals, opining on the issue of whether the FHA includes domestic violence victims as a protected class.  Plaintiff points this Court to the several district courts that have previously held that "sex" discrimination includes victims of domestic violence.  *See Butler v. Sundo Capital, LLC*, 559 F. Supp. 3d 452, 457 (D. Penn. 2021); *Wilson v. Guardian Mgmt., LLC*, 383 F. Supp. 3d 1105, 1108-1110 (D. Or. 2019); *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 872 (S.D. Ohio 2013); *Creason v. Singh*, 2013 U.S. Dist. LEXIS 168269, 2013 WL 6185596, at *1, *4 (N.D. Cal. Nov. 26, 2013); *Meister v. Kansas City*, 2011 U.S. Dist. LEXIS

19166, 2011 WL 765887, at *6 (D. Kan. Feb. 25, 2011); *Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675, 678 (D. Vt. 2005).

These opinions may be relied upon to the extent they offer persuasive value; however, in this Court's view, their value is limited.  Beginning with *Bouley*, a case that commonly recurs in subsequent district court opinions, the Court notes that there is very little actual analysis of the issues involved.  Instead, the *Bouley* Court simply cites to another case, *Smith v. City of Elyria*, 857 F. Supp. 1203, 1212 (N.D. Ohio 1994), in which another district court held, in the context of a §1983 *Monell* claim, that sex discrimination could be found upon evidence that a defendant's "domestic dispute policy had a discriminatory impact and was motivated by intent to discriminate against women."  *Bouley*, 394 F. Supp. 2d at 678.  The subsequent *Meister* case from the District of Kansas wholly relies upon the *Bouley* case for its determination that domestic violence victims are protected under the FHA.  2011 WL 765887, at *6.  The district court in *Dickinson* simply cited to the *Bouley* and *Meister* cases.  975 F. Supp. 2d at 872.  One can see a pattern developing.

*Wilson* offers a more thorough justification for its holding that "claims alleging discrimination based on status as a victim of domestic violence are not *per se* invalid."  383 F. Supp. 3d at 1108.  The *Wilson* court cites the same decisions as previously mentioned, and also cites a 2011 Housing and Urban Development memorandum which concluded that discrimination against victims of domestic violence "may be illegal under the FHA."  *Id*. at 1109 (citing HUD, *Assessing Claims of Housing Discrimination against Victims of Domestic Violence under the Fair Housing Act (FHA) and the Violence against Women Act (VAWA)*).  Even to the extent this memorandum is of persuasive value, this is hardly a full-throated endorsement of the position that the FHA protections always extend to domestic violence victims.

Lastly, *Butler v. Sundo Capital, LLC*, is another, more thorough, examination of the issue. While *Butler* mostly relies upon the reasoning set forth in *Wilson*, the *Butler* court also reasons that FHA claims based on domestic violence are not *per se* invalid because 85% of domestic violence victims are women and "discrimination against domestic violence victims is likely to be discrimination against women." *Butler*, 559 F. Supp. 3d at 457.  This kind of statistical evidence may be relevant in the context of a disparate impact case (which *Butler* was), but it has little relevance when considering whether a defendant's discrete actions against a particular plaintiff are actually motivated by discriminatory animus against women.

Plaintiff contends that these cases demonstrate that the FHA, in every instance, protects victims of domestic violence under the rubric of sex discrimination, and some of the cases cited by Plaintiff seem to concur with this position. *See Dickinson*, 975 F. Supp. 2d at 872; *Meister*, 2011 U.S. Dist. LEXIS 19166, 2011 WL 765887, at *6.  But the issue is more nuanced than this.

In this Court's view, a sex discrimination claim based upon claimant's status as a domestic violence victim may lie only if a plaintiff can demonstrate:  (1) the defendant has adopted a policy regarding victims of domestic violence that has had a disparate impact upon women or (2) the defendant has intentionally discriminated against the plaintiff/domestic-violence-victim *because* she is a woman.  In the context of a disparate impact claim, status as a domestic violence victim may be an adequate proxy for sex because a policy unfairly targeting domestic violence victims will largely affect women.  But, when considering a disparate treatment claim, status as a domestic violence victim is not a sufficient proxy for sex for the simple reason that not all domestic violence victims are women; plaintiff must still demonstrate that she was intentionally discriminated against based upon her *sex*.  *Bostock*, 590 U.S. at 657-658.  As the Eighth Circuit has observed, though in

the context of an equal protection claim, "discrimination against victims of domestic violence is not *ipso facto* sex discrimination." *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005).

Plaintiff's particular claim is one of disparate treatment, i.e, that MHA evicted Plaintiff because she was a victim of domestic violence. This is not a case in which resort to the *McDonnell Douglas* test is necessary because Plaintiff does not rely upon inferential evidence. Rather, Plaintiff alleges that MHA sought to evict her because she was being stalked by Smith, and MHA does not dispute that Smith's visits to Plaintiff's apartment led to the eviction action. There is a factual dispute between the parties regarding whether Smith's visits were welcomed by Plaintiff (as MHA contends) or constituted stalking and domestic violence (as Plaintiff maintains). But, given the Court's holding above, it does not suffice to allege that Plaintiff has been discriminated against because of her status as a victim of domestic violence. Plaintiff must further demonstrate that MHA's actions were taken against her because she is a woman, and this Court sees no evidence of this in the record. Plaintiff's sex-based discrimination claim under the FHA must be dismissed.

### ii.    Disability Discrimination.

Plaintiff's claim for disability discrimination alleges that MHA's failure to "establish standards" and adopt a "written policy" regarding tenants' medical marijuana use subjected Plaintiff to eviction without "actual notice" that her conduct violated her lease. Dkt. No. 2 at 17. The undisputed facts demonstrate that MHA is entitled to summary judgment on this claim. Assuming that Plaintiff's theory of relief (i.e., that lack of actual notice that Plaintiff's drug use may subject her to eviction constitutes discrimination) is legally viable, the undisputed facts demonstrate that MHA *did* have a policy prohibiting marijuana use and Plaintiff *did* have notice that her use of marijuana could result in termination of her lease. Plaintiff's lease included a term prohibiting drug use on the premises. Dkt. No. 43 at 10. MHA regularly informed tenants through

monthly newsletters that use of medical marijuana was prohibited on MHA property.  Dkt. No. 43-1, Ex. H.  Plaintiff admitted that she was aware of MHA's policy forbidding marijuana use on the premises.  Dkt. No. 43-2 at 20-21.  MHA is entitled to summary judgment on Plaintiff's disability discrimination claim.

### iii.    FHA Retaliation.

The nature of Plaintiff's claim for retaliation under the FHA is unclear from the face of her Complaint.  After setting forth her allegations of sex discrimination, Plaintiff asserts without elaboration that "[t]he above asserted facts also support retaliation in violation of 42 U.S.C.A. § 3617."  Dkt. No. 2 at 17.  In her Response to MHA's Motion for Summary Judgment, Plaintiff states that MHA's employee issued Plaintiff a lease violation notice demanding payment for court costs arising from the 2021 FED action, that MHA's attempted termination of Plaintiff's lease for violations of the marijuana policy was, in reality, retaliation for Plaintiff's prevailing in the 2021 FED action and her invocation of her rights under *VAWA*, and, lastly, that MHA has retaliated against Plaintiff for the filing of this action.  Dkt. No. 74 at 18.

To state a claim for retaliation under the FHA, Plaintiff must demonstrate that:  "(1) she exercised a right guaranteed by the FHA; (2) a defendant's intentional conduct constituted interference; and (3) a causal connection exists between the exercise of the FHA right and the defendant's conduct."  *Watson v. Vici Cmt. Dev. Corp.*, 2022 U.S. Dist. LEXIS 55211, at *18 (W.D. Okla. Mar. 28, 2022).

The Court notes that Plaintiff's Response to Defendant's Motion for Summary Judgment argues two bases for recovery that are nowhere alleged in her Complaint:  Plaintiff argues that retaliation can be seen in a lease violation notice issued to Plaintiff demanding payment of court costs relating to the 2021 FED action and in actions taken by MHA after the filing of the instant

18

lawsuit.  These facts appear nowhere in Plaintiff's Complaint.  This Court will not permit Plaintiff to constructively amend the allegations in her Complaint in response to Defendant's Motion for Summary Judgment; allowing such tactics would undermine the purpose of the Complaint and of the entire summary judgment procedure.  *See, Depatco Inc. v. Ground Eng'g Consultants, Inc.*, 2018 U.S. Dist. LEXIS 234188, *25 (D. Wyo. Dec. 3, 2018) (collecting cases).

Regarding Plaintiff's argument that the 2022 FED action was filed in retaliation for Plaintiff's invocation of her *VAWA* rights, this Court has already found that Plaintiff's status as a domestic violence victim does not implicate the FHA's protections against sex discrimination.  As such, Plaintiff has not exercised any right protected by the FHA.  Even if Plaintiff had invoked some right protected under the FHA, Plaintiff has put forth no evidence that would demonstrate that the filing of the 2022 FED action was done in retaliation.  Summary judgment is granted as to Plaintiff's FHA retaliation claim.

> **F.    This Court declines to exercise jurisdiction over Plaintiff's remaining state law claims.**

As set forth above, MHA is entitled to summary judgment on Plaintiff's federal constitutional and statutory claims.  Remaining are various common law tort claims and tort claims arising from the Oklahoma constitution and Oklahoma statutes.  Also remaining is Plaintiff's breach of contract claim; whether this claim raises a "federal question" sufficient to justify this Court's jurisdiction is worthy of some discussion.

Plaintiff has brought a breach of contract claim, alleging that MHA has violated provisions of the lease "that require Defendant to follow federal and state fair housing laws, civil rights laws, § 504, VAWA, the HUD regulations and promulgations, the Oklahoma Residential Landlord and Tenant Act, and the terms of its contract."  Dkt. No. 2 at 20-21.  Though Plaintiff claims that MHA

breached the lease by violating provisions of federal law, this Court does not find that this is sufficient to invoke jurisdiction under 28 U.S.C. §1331.

In certain cases, "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)(citing *Hopkins* v. *Walker,* 244 U.S. 486, 490-491 (1917)). Yet the "mere need to apply federal law in a state-law claim" will not confer jurisdiction. *Id.* Rather, federal question jurisdiction over state law claims is confined to only those claims "that 'really and substantially involve a dispute or controversy respecting the validity, construction or effect of federal law.'" *Id.* (quoting *Shulthis v. McDougal,* 225 U.S. 561, 569 (1912)). Thus, exercise of federal jurisdiction over state law claims requires "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* Lastly, even the presence of a substantial, disputed federal issue is not necessarily sufficient to confer federal-question jurisdiction, as, prior to exercising such jurisdiction, a federal court must consider whether jurisdiction may be exercised "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

This Court has already opined upon the federal issues implicated by Plaintiff's breach of contract claim, including her civil rights claims, rehabilitation act claim, and FHA claims. Plaintiff's breach of contract claim further invokes VAWA and "HUD regulations and promulgations". Dkt. No. 2 at 20-21.[6]

---

[6] From this Court's review of Plaintiff's Complaint, the only specific HUD promulgation referenced is a HUD memorandum purportedly requiring public housing agencies to adopt medical marijuana policies. This Court has effectively addressed the issue of whether MHA promulgated and notified Plaintiff of its medical marijuana policy. *See* §§ II.B, II.E.ii, *supra*. The Court will accordingly confine its discussion to Plaintiff's claim that MHA violated provisions of VAWA.

In this Court's view, the principle legal questions in Plaintiff's breach of contract claim are questions of Oklahoma law:  does the contract, through specific and definite reference, effectively incorporate the law as Plaintiff contends; does the pre-existing duty rule bar or otherwise affect enforcement of such terms via a breach of contract action; may Plaintiff bring a breach of contract action, even though the statute or provision at issue does not provide for a cause of action?  These are all questions of state contract law.  In contrast, the Court does not believe that there are complex questions of interpretation raised in Plaintiff's allegations that MHA has violated VAWA:  the disputes in this regard are factual rather than legal – namely, whether Plaintiff willingly permitted Smith into her unit or was a victim of stalking and whether Plaintiff returned the VAWA verification paperwork.  This Court does not glean from the parties' briefing that there is any legal disagreement at all regarding the interpretation of VAWA.  Thus, to the extent that Plaintiff's breach of contract action may implicate federal law, those questions are neither substantial nor, so far as the Court can tell, in genuine dispute.  Exercise of federal question jurisdiction over the breach of contract claim would be improper.

This preceding analysis has disposed of all of Plaintiff's claims arising under federal law, and consequently the basis for federal subject matter jurisdiction.  "Under these circumstances, the district court may decline to exercise continuing 'pendent' or supplemental jurisdiction over plaintiff's state claims." *Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966)).

## CONCLUSION

MHA is entitled to summary judgment with respect to Plaintiff's claims arising under the federal constitution and federal statutes.  Plaintiff's remaining claims sound in state law and do not

implicate federal jurisdiction; this Court declines to exercise pendent or supplemental jurisdiction over such claims.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is GRANTED in part, in accordance with the foregoing opinion.

The Court DECLINES JURISDICTION over Plaintiff's state law claims.

Dated this 4th day of October 2024.

JOHN E. HEIL, III
UNITED STATES DISTRICT JUDGE